CASE 71—PETITION EQUITY—DECEMBER 14.

## Sloan, Etc. v. Thornton, Ex'or., Etc.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. WILLS—CONSTRUCTION.—In a clause in a will which gave "to the children of my late uncle, John Woods, deceased, their names, number or place of residence being unknown to me, I bequeath the sum of three thousand dollars to be divided equally between them share and share alike," the word "children" was used as synonymous with the word "heirs," and included the children of said Woods' deceased children, under the provisions of section 4841 of the Kentucky Statutes, which provides that if the devisee or legatee dies before the testator, or is dead at the making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed as the

devisee or legatee would have done if he had survived the testator, unless a different disposition is made, or required by the will

GEO. S. SHANKLIN FOR APPELLANTS.

1. The provisions of sections 2064 and 4841 of the Kentucky Statutes were intended to do away with survivorship under wills, and the spirit and intention of these statutes have been construed by the court as modifying or changing the common law doctrine of survivorship, and the word "children" held to include descendants, unless the will showed a contrary intention. Yates v. Gill, 9 B. M., 203; Renaker v. Lemon, 1 Duval, 212; Dunlap v. Shreve's Exor., 2 Duval, 334; Chenault v. Chenault, 88 Ky., 83; Fuller v. Martin, 16 Ky. Law Rep., 576; Jarman on Wills, 6th ed., vol. 2, page 713; Duval v. Godson, 79 Ky., 224; Miller v. Carlisle, 12 Ky. Law Rep., 66.

FALCONER & FALCONER FOR APPLELEEF

1. It was manifestly the intention of the testatrix when she provided "but if none of said children shall be living at the time of my death, then this legacy shall fall into, and become a part of my residuary estate and pass accordingly," to limit the legacy to the children of said uncle living at the time of her death, and if none of them were so living, then that the legacy should lapse and become part of her residuary estate.

2. A devise to a class of persons takes effect in favor of those who constitute the class at the death of the testator, unless a contrary intention can be inferred from some, part of the language of the will, or from some such extrinsic facts as may be entitled to consideration in its construction. Jarman on Wills, 2d vol., pages 154-5, and note and authorities there cited.

3. An enlarged or extended import of the word "children" when used as descriptive of persons to take under a will is only permissible in two cases: 1st, from necessity where the will would be otherwise inoperative; and 2d, where a testator has shown by other words that he did not use the word in its ordinary and proper meaning, but in a more extended sense. Roper on Legacies, vol. 1, 69; Jarman on Wills, vol. 2, 51-2; Phillips v. Bell, 9 Dana, 2; Yates v. Gill, 9 B. M., 204; 12 B. M., 115; Hopson v. Commonwealth, 7 Bush, 647; Churchill v. Churchill, 2 Met., 496; Sheats v. Grubbs' Ex'r, 4 Met., 341; Duval v. Godson, 79 Ky., 227; Miller v. Carlisle, 90 Ky., 205.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Harriet Woods died unmarried and without issue, having previously made and published her last will and testament, and the question upon this appeal is the construction to be given to the word "children" in the fourth clause of the will, which clause reads as follows:

"Fourth—To the children of my late uncle, John Woods, eceased, their names, number, or place of residence being unknown to me, I bequeath the sum of $3,000, to be divided equally between them, share and share alike; but if none of said children should be living at the time of my death, then this legacy shall fall into and become a part of my residuary estate, and pass accordingly."

It appears from the testimony in the case that decedent had few relations and led a singularly isolated life.   The devisees under the second and third clauses of her will were related to her on her mother's side; on her father's side she had no relatives except the descendants of her late uncle, John Woods, who, previous to her death, had resided in the State of Louisiana and whose living descendants at the date of the execution of the will consisted of one son, William Woods, and the children of a dead son, John Woods, Jr., and the children of a dead daughter, Mrs. Fisher.  Subsequently, to the probation of the will William Woods died, leaving a will, in which he devised all of his interest in the estate of his cousin, Harriet Woods, to his widow, Matilda Ann Woods, and his widow, as devisee, contends that the word "children," as used by Harriet Woods, should be construed to mean living children, and that the entire legacy belongs to her.

Appellants, who are the children of the dead son and daughter of John Woods, deceased, contend that the word "children," as used by the testatrix, was intended to, and did embrace the descendants of dead children along with the living children, and that they are entitled to share in the legacy, *per stirpes*, with the appellee, Matilda Ann Woods.

The meaning of the word "children," and words of like import occurring in wills under the common-law rule of construction, is admirably stated in the case of Phillips' Devisees v. Beall, 9 Dana, 1, in which it was held that "the term 'children,' in a devise will not embrace grandchildren unless there is something indicating that the testator intended to include them." And this rule of construction was uniformly followed by this court until it was changed by statutory regulation. But even at common law, where the whole context of the will showed that the testator intended to extend the meaning of the word so as to include issue, or descendants, courts so construed the word as to effectuate the purpose and intention of the testator.

In this case the first sentence of the clause in question is: "To the children of my late uncle, John Woods, deceased," as a class, not to particular children, or living children, but simply "to the children.",And in the same sentence she adds: "Their names, number or place of residence being unknown to me," and from these words it is apparent that she had no acquaintance with the children of her uncle to whom she made these bequests, and no attachment for them individually; and her intention was to made provisions for the descendants of her uncle on account of their consanguinity and because they were the natural objects of her bounty;

there was no reason why she should have selected one to the exclusion of the others.

In the next paragraph of this clause she bequeaths this sum "to be divided equally between them, share and share alike," plainly manifesting by these words a purpose that all of the children, or heirs, of her deceased uncle should share equally in the provision made for them, the word "children" being used by her as synonymous with the word "heirs."

The last paragraph of the clause provides that "if none of said children should be living at the time of my death, then this legacy shall fall into and become a part of my residuary estate and pass accordingly." As the condition upon which this paragraph of the clause was to take effect did not exist at the time of the death of the testatrix these words have no vitality, and should not be allowed in any way to affect the construction of the first part of the clause, which makes a complete bequest of the fund named therein.

It is insisted by counsel for appellee that the words "living at the time of my death" were intended by the testatrix to, and do, qualify the word "children," as used in the first part of the clause; that if John Woods had left no children living at the time of the death of the testatrix the whole legacy would have lapsed and become a part of the fund disposed of in the residuary clause of the will, and that the devise was, in effect, to the children of John Woods living at the death of testatrix. But the construction contended for does violence to the usual and ordinary signification which attaches to the words in question, and, in view of the whole context of the clause, would tend to defeat the purpose of

testatrix to make provision for the descendants of her uncle.
It is, however, unnecessary for us to speculate as to the
meaning and effect of the word "children," as used in the
clause in question under the common-law rule of construc-
tion, as we think the rule of construction provided by section
4841 of the Kentucky Statutes seems to be conclusive thereof.
That section reads as follows: "If a devisee or legatee die
before the testator, or is dead at the making of the will,
leaving issue, who survive the testator, such issue shall take
the estate devised or bequeathed as the devisee or legatee
would have done if he had survived the testator, unless a
different disposition is made or required by the will."

The effect of this statute and the change made by it in the
common-law rule of construction of the word "children" have
been so ably and exhaustively discussed in the cases of Ren-
aker v. Lemon, 1 Duvall, 212; Dunlap v. Shreve's Adm'r, 2
Duvall, 334, and Chenault's Guardian v. Chenault's Ex'or, 88
Ky., 84, as to dispense with any discussion of them at this
time.    These cases completely reverse the common-law rule
of construction as laid down in Phillip's Devisees v. Beall,
*supra*, and hold that the term "children," used in a devise,
embraces grandchildren, "unless a different disposition is
required by the will."    In the case of Dunlap v. Shreve's
Adm'r, *supra*, in construing the words of the statute, "a de-
vise to children embraces grandchildren when there are no
children," the court says:    "This is declaratory, affirmative
and peremptory.    It declares the common-law doctrine and
peremptorily affirms when there are no children a devise to
children as a class must necessarily embrace grandchildren;
but it does not say that when there are both living children

and issue also of dead children a simple devise to unnamed children as a class should never embrace the issue of dead children, and any such construction would conflict with the animate spirit and practical purpose of the statutory law on the subject of lapse and survivorship, and also with the spirit of a will indicating that the testator meant all the descendants of dead children." And this has been the rule of construction ever since.

In the case of Chenault's Guardian v. Chenault's Ex'or, the language of the will was: "The remainder of my estate I desire to be equally divided between the children of my brothers and sisters," and the court, after a careful review of all the decisions of this court both under the common law and the statutory rule of construction, held that "the descendants of those children of the testator's brothers and sisters who were dead at the death of the testator, whether they died before or after the will was executed, were entitled to the respective shares of the estate which their several ancestors would have taken if alive," expressly overruling the case of Sheets v. Grubbs, 4 Met., 339, which conflicted with the statutory rule as interpreted in Dunlap v. Shreve's Adm'r; and we are of the opinion that the proper construction of the fourth clause of the will of the testatrix in this case requires that the fund devised to the children of her uncle, John Woods, should be divided equally between the appellants and appellee *per stirpes*.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent herewith.